**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

**RICK RANIZE and RITA RANIZE,**

    **Plaintiffs,**

**v.**                                                                                               **Case No: 5:11-cv-646-Oc-PRL**

**TOWN OF LADY LAKE, FLORIDA**

    **Defendant.**

___

**ORDER**

After prevailing at trial, Plaintiffs Rita Ranize and Rick Ranize filed the instant motions for attorneys' fees and costs against Defendant Town of Lady Lake (Docs. 85-87 & 92), to which the Town has responded (Docs. 89 & 90). For the following reasons, the motions are due to be **GRANTED** as set forth herein.

    **I.    BACKGROUND**

On November 25, 2011, the Ranizes filed two intertwined claims in this § 1983 action against the Town: Mr. Ranize claimed that the Town infringed his First Amendment rights insofar as it terminated his wife from her job as a police dispatcher, and Ms. Ranize, claimed that the Town unconstitutionally terminated her based on her marital association with Mr. Ranize. Following a three-day trial, the jury determined that the Town unconstitutionally terminated Ms. Ranize and awarded her $52,000 as compensation for lost wages and benefits. (Doc. 80). The jury also found in favor of Mr. Ranize, but awarded him no damages.

    **II.    DISCUSSION**

The Ranizes now seek $115,205 in attorneys' fees (Docs. 85 & 92) and $5,583.72 in

taxable costs (Doc. 85, p. 15) pursuant to 42 U.S.C. § 1988.[1]  In support of their request, the Ranizes attach itemized billing records (Docs. 86-3 & 92-1), expert and client affidavits (Docs. 86-4 – 86-7), and orders from the Southern District of Florida (Docs. 86-8 & 86-9).

In response, the Town argues that because the jury found in favor of Mr. Ranize but declined to award him even a single dollar in damages, the Court should simply reduce the requested attorneys' fees by one half.  (Doc. 90, p. 4).  Further, the Town objects to the Ranizes' requested hourly rate, number of hours expended, and certain costs.  (*Id.* at 4-10; Doc. 89).  In support of its objections, the Town attaches an order from the Middle District of Florida and the Eleventh Circuit (Docs. 90-1 & 90-2), an expert affidavit (Doc. 90-3), and the Ranizes' responses to interrogatories (Docs. 90-4 & 90-5).

The Court will first address whether Mr. Ranize is a prevailing party for purposes of his claim and then evaluate the requests for attorneys' fees and costs.

### A. Rick Ranize Is Not a Prevailing Party.

The Ranizes argue that both Mr. and Ms. Ranize are prevailing parties, entitling them to the attorneys' fees incurred in successfully bringing this litigation.  In contrast, the Town argues that Mr. Ranize is not a prevailing party because the jury lacked a sufficient basis to return a verdict in his favor, and that, at best, his was a technical victory incapable of justifying an award of attorneys' fees.  (Doc. 90, pp. 3-4).  Accordingly, the Town requests that the Court reduce the fee award by fifty percent.

---

[1] The Court added the total hours requested in the billing records ($112,205) (Doc. 86-3, p. 4) and the hours requested in the supplemental motion for fees ($3,000) (Doc. 92-1, p. 1) to arrive at a total of $115,205.

The Ranizes' Motion for Award of Attorneys' Fees and Costs requests $5,704.64 in taxable costs. (Doc. 85, p. 15).  The Bill of Costs requests $5,583.72.  (Doc. 87).  Seeing no explanation for the discrepancy, the Court will use the lower number from the Bill of Costs in its analysis.

While the jury awarded $52,000 in damages to compensate Ms. Ranize for a net loss of wages and benefits on her claim (Doc. 75, p. 3), the Ranizes did not seek any particular dollar figure for Mr. Ranize's intangible losses on his claim. Having left the issue to the jury's discretion, it awarded Mr. Ranize nothing. (*Id.* at 5; Doc. 85, p. 3). As a result, while the jury found in Mr. Ranize's favor, it also found he suffered no damages as a result of of the Town's termination of his wife. *Id.*

Section 1988(b) provides that "the court, in its discretion, may allow the prevailing party" in a suit to enforce rights under § 1983 "a reasonable attorneys' fee as part of the costs." 42 U.S.C. § 1988(b). Congress enacted § 1988 to give victims of civil rights violations effective access to the judicial process, and to encourage private attorneys to enforce fundamental constitutional rights under § 1983. *Dowdell v. City of Apopka*, 698 F.2d 1181, 1189 (11th Cir. 1983).

The Eleventh Circuit has defined a prevailing party as "usually the litigant in whose favor judgment is rendered . . . even though he has not sustained all his claims." *Reider v. R.J. Reynolds Tobacco Co.*, 5 F. Supp. 3d 1334, 1337 (M.D. Fla. Mar. 5, 2014) (quoting *Head v. Medford*, 62 F.3d 351, 354 (11th Cir. 1995)). "Cases from this and other circuits consistently support shifting costs if the prevailing party obtains judgment on even a fraction of the claims advanced." *Id.* A finding of liability but no compensatory damages can be sufficient to support a plaintiff's prevailing party status so long as nominal damages are awarded. *Id.* (citing *Three–Seventy Leasing Corp. v. Ampex Corp.*, 528 F.2d 993, 998 (5th Cir. 1976)).

Importantly, a distinction exists between an award of nominal damages and an award of zero damages. *Id.* (citing *Farrar v. Hobby*, 506 U.S. 103, 112–13 (1992) (discussing prevailing party status under 42 U.S.C. § 1988)). A judicial pronouncement, unaccompanied by an enforceable judgment on the merits, does not render the plaintiff a prevailing party. *Id.* Indeed,

...

moral satisfaction that results in a favorable statement of law cannot alone bestow prevailing party status. *Id.*

In light of the Eleventh Circuit case law, the Court finds that Mr. Ranize is not a prevailing party. Although the jury found in his favor on the First Amendment claim, it found that he suffered no damages due to the Town's actions. Thus, the Court finds that Mr. Ranize secured a mere "technical victory," insufficient to support prevailing party status for an award of attorneys' fees.

### B. Attorneys' Fees

While Ms. Ranize has a right to attorneys' fees incurred in the successful prosecution of her claim, the Court has a corresponding duty to ensure that such an award is reasonable. In determining reasonable attorneys' fees, the Court applies the federal lodestar approach, which is calculated by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate for the services provided by counsel for the prevailing party. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Once the court has determined the lodestar, it may adjust the amount upward or downward based upon a number of factors, including the results obtained. *Norman v. Hous. Auth. of the City of Montgomery*, 836 F. 2d 1292, 1302 (11th Cir. 1988).

"Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436). Additionally, the Court is "an expert on the question [of attorneys' fees] and may consider its own

knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F. 2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

### 1. Reasonable Hourly Rate

"A reasonable hourly rate is the prevailing market rate *in the relevant legal community* for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman,* 836 F.2d at 1299 (emphasis added). The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rates. *Id*. The trial court, itself, is an expert on the question of the reasonableness of fees and may consider its own knowledge and experience. *Id*. at 1303.

Plaintiffs request the following hourly rates: $500 per hour for Attorney G. Ware Cornell, and $150 per hour for Attorneys Micah Longo and Elizabeth Gouéti.[2] (Doc. 85, p. 14). They contend that their lead counsel, Mr. Cornell, devotes the majority of his practice to plaintiffs' employment cases, bringing skill both in the substantive law and in trial practice which justifies his rate. (Doc. 85, pp. 12-13). In support of these rates, they submit the Affidavit of Marcia Cohen, Esq. (Doc. 86-4), the Declaration of L. Edward McClellan, Esq. (Doc. 86-5), the Declaration of Professor Michael T. Morley (Doc. 86-6), the Declaration of Robert A. Beck II (Doc. 86-7), two orders from the Southern District of Florida awarding Mr. Cornell $400 per hour (Docs. 86-8 & 86-9), and time records (Doc. 86-3).

First, as to Ms. Cohen, who has been an attorney for 30 years and a member of the Middle District of Florida since 1985 and practices almost exclusively in the area of labor and employment

---

[2] The Town does not contest the $150 rate for Mr. Longo and Ms. Gouéti. The Court, in its discretion, finds that rate to be reasonable for associates in the Ocala Division, accepts it as such, and will analyze it no further.

law, she opines that the time expended and the corresponding rates charged were reasonable. (Doc. 86-4). Based on her understanding that Mr. Cornell has successfully handled a large number of complex employment law cases, and that he routinely bills and is paid his $500 hourly rate, she opines that $500 per hour is a reasonable rate for Mr. Cornell. She asserts that the complexity of the issues raised in the case, the fact that Mr. Cornell accepted the case pursuant to a contingent fee arrangement, and that the litigation of the case took several years until its successful result at trial justifies the requested rates.

Next, L. Edward McClellan, Jr., who has been a trial attorney for 47 years and practices in Ocala, Florida (Doc. 86-5), like Ms. Cohen, opines that Mr. Cornell should be compensated at $500 per hour, particularly given the fact that he is "unaware of any lawyer in this geographical area with the skill or experience necessary to handle a claim such as this one." *Id.* at 4. He states that Mr. Cornell is "a very skilled lawyer, and has billed and been paid for his time at $500 an hour for several years." *Id.*

In addition, Plaintiffs submit the Declaration of Professor Michael T. Morley (Doc. 86-6) who has been practicing law for approximately 10 years and has a variety of litigation experience, from private practice, to a federal clerkship, to teaching Contracts and Evidence at Barry University School of Law. He generally opines on the complexity of the case and implies that not just any attorney could have handled it, but does not state an opinion regarding Mr. Cornell's rate.

Plaintiffs also file the Declaration of Robert A. Beck, II, Mr. Cornell's former client. (Doc. 86-7). Mr. Beck attests that he paid Mr. Cornell $500 per hour to represent him in a complex case brought by a major law firm. He states that 2010-2013 case was conducted in four different courts, state and federal.

Finally, Plaintiffs submit two cases from the Southern District of Florida in which Mr. Cornell was awarded a $400 hourly rate. Neither case involved the First Amendment or was litigated in the Middle District of Florida; thus, neither case is particularly persuasive. *Baker v. Soil Tech Distributors, Inc.* was a § 1981 case (Doc. 86-8), and *Ostrow v. Globecast America Inc.* involved an age discrimination claim (Doc. 86-9). Indeed, both were litigated in Ft. Lauderdale.

A review of decisions in the Middle District of Florida shows that the prevailing market rate is lower than Mr. Cornell's proposed hourly rate of $500. *See, e.g., Delta RF Tech., Inc. v. RIIMIC, LLC*, No. 5:09-cv-373-Oc-10PRL (M.D. Fla. Nov. 4, 2013) (awarding counsel a rate of $350 per hour); *Raetano v. Burzynski*, No. 8:08-cv-200-T-17-EAJ, 2009 WL 691921 (M.D. Fla. Mar. 13, 2009) (awarding counsel a rate of $350 per hour); *Harty v. Bapuji*, No. 8:10-cv-2720-T-27TBM, 2012 WL 2044970 (M.D. Fla. May 17, 2012) (awarding counsel a rate of $350 per hour). Moreover, $500 per hour is substantially higher than rates awarded in the Middle District of Florida in First Amendment cases. *See Troche v. City of Orlando,* No. 6:14-CV-419-ORL-22, 2015 WL 631380, at *4 (M.D. Fla. Feb. 13, 2015) (concluding a $500 hourly rate was not reasonable and reducing rate to $400); *Hodges v. Sch. Bd. of Orange Cnty., Fla.,* No. 6:11-CV-135-ORL-36, 2014 WL 6455436, at *7 (M.D. Fla. Nov. 13, 2014) (awarding hourly rate of $295 for work in First Amendment litigation); *Lindsey v. Howell,* No. 8:10-CV-01910-T-23, 2012 WL 6699593, at *3 (M.D. Fla. Nov. 26, 2012) report and recommendation adopted, No. 8:10-CV-1910-T-23, 2012 WL 6699584 (M.D. Fla. Dec. 26, 2012) (awarding hourly rate of $160 to defendant's attorney in First Amendment action); *Am. Civil Liberties Union of Florida Inc. v. Dixie Cnty. Fla.,* No. 1:07-CV-00018-MP-GRJ, 2012 WL 384925, at *2 (N.D. Fla. Feb. 6, 2012) report and recommendation adopted as modified, No. 1:07CV18-MP-GRJ, 2012 WL 1004372 (N.D. Fla. Mar. 23, 2012) (awarding $400 hourly rate to attorney with 29 years of experience, where Middle District of

Florida was the relevant legal community); and *First Vagabonds Church of God v. City of Orlando, Fla.*, No. 606CV-1583-ORL-31KRS, 2008 WL 4877159, at *5 (M.D. Fla. Nov. 12, 2008) (awarding $400 hourly rate to attorney with 25 years of experience).

Mr. Cornell is a board-certified civil trial lawyer, concentrating on employment litigation. (Doc. 85, p. 7). He has been a member of the Florida bar since 1975, clerking for Judge William M. Hoeveler in the Southern District in 1977-1978. Despite Mr. Cornell's experience, his proposed rate of $500 is significantly higher than amounts awarded in First Amendment cases in the Middle District of Florida, as well as much higher than amounts typically awarded in civil cases in the Ocala Division, where this case was litigated. Considering the materials submitted, prevailing rates in the Ocala market, and the Court's own knowledge and experience, $375/hr—as opposed to $500/hr—is a reasonable rate for Mr. Cornell.

While the Town proposes a $325 hourly rate for Mr. Cornell (Doc. 90, p. 5), that rate is too low, as the case was more complicated than the Town concedes. The case involved rather inventive interpretations of First Amendment retaliation and intimate association. Even the District Judge presiding over the earlier stages of the case noted that "this is a complex area of the law." (Doc. 14, p. 19). A $500 hourly rate, on the other hand, is not supported, either for the Ocala Division (as discussed) or by the case law.

The Court's review of the three cases submitted by both parties (none of which represent the Ocala Division) reveals that none of these courts agreed that Mr. Cornell should receive $500 per hour. Rather, the judges in those cases awarded Mr. Cornell between $300 and $400 per hour. The Court also notes that the Town's fee expert, Charles Robinson Fawsett, a partner at Shutts & Bowen LLP and labor and employment attorney of over 30 years, was "personally aware that there

are at least five attorneys within Orange, Seminole and Alachua Counties who [he believes] would have been qualified to represent the Plaintiffs in this case." (Doc. 90-3, p. 2).

In addition, while Mr. Cornell's client, Mr. Beck, stated that he has paid Mr. Cornell $500 per hour, this rate was associated with ongoing work in complex litigation brought by a major law firm, litigated in four different courts. Such evidence is not persuasive, particularly in light of the body of Middle District case law awarding rates much lower than $500 per hour to lawyers with significant experience.

Here, based upon the foregoing, as well as Court's own experience and familiarity with rates in the Ocala Division, the undersigned finds that the requested rate for Mr. Cornell is substantially higher than the prevailing market rates. Given the nature of the case and Mr. Cornell's experience, the Court will award, as stated, a rate of $375/hr. Additionally, the undersigned finds that the requested rates of $150/hr for Mr. Longo and Ms. Gouéti should be approved by the Court because they are reasonable and consistent with market rates in the Ocala Division.

## 2.  **Reasonableness of Hours Expended**

The next step in the lodestar analysis is to determine what hours were reasonably expended on the litigation. The attorney fee applicant should present records detailing the amount of work performed and "[i]nadequate documentation may result in a reduction in the number of hours claimed, as will a claim for hours that the court finds to be excessive or unnecessary." *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145, 1150 (Fla. 1985). Then, the fee opponent "has the burden of pointing out with specificity which hours should be deducted." *Rynd v. Nationwide Mut. Fire Ins. Co.,* No. 8:09-cv-1556-T-27TGW, 2012 WL 939387, at *3 (M.D. Fla. January 25, 2012) (quoting *Centex-Rooney Const. Co., Inc. v. Martin Cnty.*, 725 So.2d 1255,

1259 (Fla. App. Ct. 1999).   Attorneys "must exercise their own billing judgment to exclude any hours that are excessive, redundant, or otherwise unnecessary."  *Galdames v. N&D Inv. Corp.*, 432 F. App'x 801, 806 (11th Cir. 2011).   A court may reduce excessive, redundant, or otherwise unnecessary hours, or may engage in "an across-the-board cut," as long as the court adequately explains its reasons for doing so.  *Id.*

The Ranizes request 243.85 hours worth of attorneys' fees.  (Docs. 86-3, p. 4 & 92-1, p. 1).  In their motion, the Ranizes note that counsel exercised "both good litigation planning and 'sound billing judgment' in this case."  (Doc. 85, p 14).  They contend that Mr. Cornell did not waste time on "formulaic discovery, but rather laser-sighted both their written and deposition discovery."  *Id.*  Further, they claim that Mr. Cornell conducted the depositions in a highly efficient manner intended to reduce the overall expenses for both parties.  *Id.* at 15.  Mr. Cornell handled the vast majority of the work and supervised responsibilities assigned to Mr. Longo and Ms. Gouéti.

The Town, however, claims that the Court should reduce the number of hours on two grounds: (1) the Ranizes achieved only limited success regarding their claims, given that the jury only awarded Ms. Ranizes damages; and (2) the Ranizes improperly included travel time in several time records.  (Doc. 90, p. 8).

The Court will address the first argument when calculating the lodestar adjustment, and thus, now analyzes the Town's objection to the time billed for travel.  The Town notes that the Ranizes "chose to hire an attorney from the Southern part of the state with offices in Weston, FL." *Id.* at 9.   Mr. Cornell's office is 289 miles from the Ocala courthouse and requires over four hours of driving each way.  *Id.*   The Town estimates that Mr. Cornell spent approximately 41.5 hours of time traveling for this case and requests that the Court adjust the requested hours to exclude

travel time. *Id.*

Courts in the Eleventh Circuit routinely deny time billed for travel during the course of litigation. Absent a showing of a lack of qualified counsel, travel time is not properly visited on one's adversary. *See Brother Int'l Beach Club Condo. Ass'n, Inc.*, No. 6:03-CV-444-ORL28DAB, 2005 WL 1027240, at *5 (M.D. Fla. Apr. 28, 2005) report and recommendation adopted sub nom. *Brother v. Int'l Beach Club Condo. Ass'n, Inc.*, No. 603CV444ORL28DAB, 2005 WL 1139927 (M.D. Fla. May 13, 2005) (declining to award travel time after party failed to show a lack of qualified local counsel). Here, only one of the Ranizes' three fee experts, Mr. McClellan, attests that he is unaware of local counsel who could have handled this case (Doc. 86-5, p. 4). The Court finds this declaration insufficient to award the significant amount Mr. Cornell billed for travel time, particularly in light of Mr. Fawsett's contention that he is aware of at least five attorneys in neighboring counties who could have handled the Ranizes' case. *See St. Fleur v. City of Fort Lauderdale*, 149 F. App'x 849, 853 (11th Cir. 2005) (finding no abuse of discretion in reduction of hours spent on "billing at full rates for non-legal tasks like travel . . ."); *Ass'n for Disabled Americans, Inc. v. Integra Resort Mgmt., Inc.*, 385 F. Supp. 2d 1272, 1301 (M.D. Fla. 2005) (deducting travel time from attorney's fees); *Demers v. Adams Homes of Nw. Florida, Inc.*, No. 6:06-CV-1235ORL31KR, 2008 WL 2413934, at *2 (M.D. Fla. June 11, 2008) aff'd, 321 F. App'x 847 (11th Cir. 2009) (reducing time entries including travel time, where lawyers traveled 72 miles from Melbourne to Orlando).

The Court independently calculated the amount of travel time entered in the billing records by adding together each entry logically related to Mr. Cornell's travel time, reaching a total of 71.25 hours. (Doc. 86-3). In doing so, the Court noticed that Mr. Cornell block billed on several of the relevant time entries, such as "Travel, prepare clients for deposition" (7.1 hours on January

9, 2013), "Attend Mediation (Maitland, FL), Travel" (6 hours on March 11, 2013), and "Travel, trial preparation" (6.5 hours on November 2, 2014). *Id.* The block billing made it impossible for the Court to distinguish travel time from time spent on the other activities. Given the difficulty the Court encountered due to the block billing, and the fact that the Town reached a lower—albeit reasonable and explained—total than the Court in its calculations, the Court finds it reasonable to reduce the number of hours billed by Mr. Cornell by **41.5**, as the Town suggests. Therefore, the total number of hours awarded equals **202.35**.[3]

### 3. Lodestar Summary Before Adjustment

The Court calculated Mr. Cornell's fee total after the adjustment to his hourly rate and reasonable hours, which equals $68,681.25.[4] Next, the Court calculated Mr. Longo and Ms. Gouéti's fee total, which equals $2,880.[5] The final amount of fees before the lodestar adjustment equals $71,561.25.

### 4. Lodestar Adjustment

The Ranizes do not take into account the results obtained—namely that Mr. Ranize was not a prevailing party—in calculating attorneys' fees. Instead, they maintain that they are entitled to the full amount of fees requested because "all of the claims related to a common core, a termination which was the direct result of the exercise of free speech and petition and the concurrent right of intimate association, all protected by the First Amendment." (Doc. 85, p. 3).

---

[3] The Court calculated the total hours by finding that Mr. Cornell billed 224.65 hours; Mr. Longo billed 4 hours; and Ms. Gouéti billed 15.2 hours. (Docs. 86-3 & Doc. 92-1). The Court then subtracted 41.5 from Mr. Cornell's total, to arrive at 183.15. Finally, 183.15 plus 19.2 equals 202.35 hours.

[4] The Court multiplied Mr. Cornell's adjusted rate of $375 per hour times 183.15 and reached $68,681.25.

[5] The Court multiplied Mr. Longo and Ms. Gouéti's hourly rate of $150 per hour times 19.2 hours and arrived at $2,880.

Essentially, they argue that despite a determination that Mr. Ranize is a technical victor, an adjustment to the lodestar is not warranted because the claims on which they did not succeed (or, here, merely technically succeeded) were inextricably intertwined with those upon which they did succeed.

In contrast, the Town contends that "where plaintiff prevails on only some of their claims, as is the case here, special considerations come into play." (Doc. 90, p. 7). The Town argues that because the Ranizes received "only limited success regarding their claims as only Rita Ranize was awarded damages related to her claim," the Court should reduce the requested hours. *Id.* at 8. Further, the Town notes that the Ranizes received $52,000 in damages, merely a fraction of the amount sought. Early in discovery, the Ranizes sought in excess of $125,659.20, and in their pretrial statement sought economic damages of $62,160 and damages for Mr. and Ms. Ranize's pain and suffering. *Id.* Based on these earlier amounts, therefore, the Town characterizes the amount the jury awarded as significantly less than the damages sought.

As noted above, Mr. Ranize is not a prevailing party, and thus, is not entitled to attorneys' fees. While the Town suggests a 50% reduction of fees, the Court finds that rate too high in light of the highly entwined nature of the Ranizes' claims. Even if Ms. Ranize had brought her case alone, she would have had to conduct discovery, take depositions, and litigate this case in a substantially similar manner to that which occurred in bringing the couple's claims together. The case focused on both Mr. and Ms. Ranize's claims roughly equally, which is evidenced by the time records, which do not distinguish between time spent on their individual claims even once. (Doc. 86-3, pp. 2-4). In light of the foregoing, the undersigned finds that a 25% reduction of the lodestar is appropriate.

The lodestar should not be reduced any further due to the amount awarded by the jury.

Although the Ranizes initially sought approximately three times the amount of damages eventually awarded to Ms. Ranize, the damages awarded represent almost the entire amount of economic damages ultimately requested, and it is clear from the record that the parties zealously contested the merits of the claims, with motions to dismiss, motions for summary judgment, trial, and motions for judgment as a matter of law present in this case. *See Hodges*, 2014 WL 6455436, at *16 (declining to reduce lodestar due to amount awarded by the jury) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) (plurality opinion) ("Congress recognized that reasonable attorney's fees under § 1988 are not conditioned upon and need not be proportionate to an award of money damages")).

The Court calculated the final amount of attorneys' fees after the lodestar adjustment, and finds that Ms. Ranize is entitled to **$53,670.94**.[6]

### C.    Costs

Plaintiffs request that the Court award their taxable costs of $5,583.72, pursuant to 42 U.S.C. § 1988. They provide a Bill of Costs (Doc. 87) and supporting documentation, as required by statute and the Federal Rules of Civil Procedure. They provide no legal support, however, for any of the requested costs. (Doc. 85, p. 15).

The Town, citing 28 U.S.C. § 1920, objects to $4,388.25 in costs, consisting of three separate payments to Ms. Cohen, Mr. McClellan, and Professor Morley, who submitted affidavits in support of the Ranizes' attorneys' fee request. (Doc. 89). Specifically, the Town objects because these individuals were not experts appointed by the Court. The Town does not object to any other requested costs.

---

[6] Twenty-five percent of the lodestar equals $17,890.31. The Court reduced the lodestar amount of $71,561.25 by $17,890.31, which equals the total fee award of $53,670.94.

At the outset, the Court notes that § 1920 does not control the types of expenses that are recoverable as costs in a § 1983 action. *See Fields v. Corizon Health, Inc.*, No. 2:09-CV-529-FTM-29, 2012 WL 162121, at *5 (M.D. Fla. Jan. 19, 2012). Instead, 42 U.S.C. § 1988 governs the fees and costs permitted by a prevailing party in a § 1983 action. *Id.* (citing *Dowdell*, 698 F.2d at 1188–89 (reversing denial of travel related expenses by district court noting that district court incorrectly applied Rule 54(d) and § 1920 instead of § 1988 to defendant's request for costs)). The Eleventh Circuit has made clear that "[t]he issue of which expenses are properly chargeable to the defendants under section 1988 is not settled by reference to any predetermined list of items." *Id.* Moreover, the Eleventh Circuit has held that in civil rights cases, reasonable attorneys' fees, "must include reasonable expenses because attorneys' fees and expenses are inseparably intertwined as equally vital components of the cost of litigation." *Dowdell*, 698 F.2d at 1192. The *Dowdell* Court approved this Circuit's tradition of liberally reimbursing attorney expenses, holding that "with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in the case preparation, during the course of litigation . . . may be taxed as costs under section 1988." *Id.* Applying the principles of *Dowdell*, the Court will now address the Town's objections to the Ranizes' requested costs.

Under § 1988, the fee award statute for civil rights cases, expert witness fees may be awarded as part of the attorneys' fee only in actions to enforce 42 U.S.C. §§ 1981 or 1981a. *See* 42 U.S.C. § 1988(c); *see also Troche*, 2015 WL 631380, at *6 (citing *Hodges*, 2014 WL 6455436, at *16). Because this case did not arise under §§ 1981 or 1981a, § 1988 does not authorize an award of the fees charged by the Ranizes' fee experts as part of their attorneys' fees. *See Hodges*, 2014 WL 6455436, at *16 (denying award of fees charged by plaintiffs' attorneys' fee expert).

Therefore, the Court will deny the Ranizes' request for the cost of its fee experts' affidavits, $4,388.25.

The Court will allow Ms. Ranize's requested costs for the filing fee ($350), summons and trial subpoena ($200), transcripts ($419.95), witness fees ($103.28), and necessary copies [7] ($122.24), for a total of **$1,195.47**.[8]  *See Mallory v. Harkness*, 923 F. Supp. 1546, 1557 (S.D. Fla. 1996) aff'd, 109 F.3d 771 (11th Cir. 1997) (allowing plaintiff's requested costs for telephone charges, postage, photocopies, and on-line research in light of the liberal principals announced in *Dowdell*).

### III.     CONCLUSION

Accordingly, it is hereby **ORDERED** that Plaintiffs Rick and Rita Ranizes' Motion for Attorney Fees (Doc. 85) and Supplemental Motion for Attorney Fees (Doc. 92) against Defendant Town of Lady Lake be **GRANTED** as to Ms. Ranize, as set forth in this Order.  The Clerk is directed to enter judgment in favor of Ms. Ranize and against the Town in the following amounts: **$53,670.94** in attorneys' fees and **$1,195.47** in costs, for a total award of **$54,866.41**.

**DONE** and **ORDERED** in Ocala, Florida on March 10, 2015.

PHILIP R. LAMMENS
United States Magistrate Judge

---

[7] The Ranizes request $122.24 for necessary copies in the Bill of Costs.  (Doc. 87, p. 1).  The invoices submitted, however, appear to total $132.24, but because two of the values are crossed out and barely legible (Doc. 87, p. 10), the Court will use the amount listed on the Bill of Costs ($122.24) in its calculations.

[8] Although Mr. Ranize is not a prevailing party, no reduction is made to account for that because the costs would have been substantially the same, if not the same, if only Ms. Ranize had proceeded on her claim.  (See discussion *supra*).


Copies furnished to:

Counsel of Record
Unrepresented Parties